IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

FEB 18 2003

Michael N. Milby
Clerk of Court

JOSE LUIS PENA            \*
      Plaintiff,          \*
                          \*
V.                         \*     CIV. NO: **B-03-040**
                          \*
VALENTIN BARAJAS       \*
THOMAS BARAJAS         \*
      Defendants,        \*

## ORIGINAL COMPLAINT

Jose Luis Pena, Plaintiff, hereby sues, Defendants, Valentin Barajas and Thomas Barajas, for the recovery of damages for breach of contract, personal injuries, slander and defamation, as grounds therefor, plaintiff alleges as follows:

### INTRODUCTION

This is an action for breach of contract in the purchase of a homestead and tort actions.

### PARTIES

Plaintiff is a citizen of Texas.

Defendants, Valentin Barajas and Thomas Barajas are citizens of the State of Florida. Valentin Barajas, herein referred to individually as Valentin. Thomas Barajas, herein referred to individually as Thomas. Valentin and Thomas joined herein and referred to as "Defendants".

### JURISDICTION AND VENUE

The Court has jurisdiction over this cause of action under the doctrine of diversity of jurisdiction in that defendants are citizens

of another state, Florida.

Venue is proper under 28 U.S.C. & 1391, as all or a substantial part of the events and omissions giving rise to plaintiff's claims occurred in this judicial district.

## FACTS

1. On or about May 1, 2002, plaintiff entered into a real estate contract with one Thomas Barajas for the purchase and sale of a homestead located at 2914 Nueces Dr., Harlingen, Texas.

2. Defendants had an older gentleman by the name of Santiago Ruiz in charge of the maintenance and showing the house to potential buyers.

3. Valentin was in charge of the maintenance of the house and only on the maintenance of the house. Any maintenance matter would have to be brought to the attention of Valentin.

4. My initial payment on the purchase was made to Thomas pending the preparation of the legal documents by Thomas and the execution on behalf of both, Thomas and plaintiff.

5. Plaintiff and Thomas agreed on 3 months as the period necessary to prepare the documents for my signature and also for the Veteran's Office to send me the necessary paper work to purchase the house. Each and every payment and/or monies paid during the first 3 months would be applied towards the purchase price.

6. Defendants further represented to plaintiff that the house had been remodeled, recarpeted, painted, roof redone, air conditioned recently maintained.

7. Defendants further agree to remove the wire fence in the back yard and replace it with a wooden fence for the protection of the children due to the fact that a canal runs behind the back yard and in that the canal had no concrete on the side walls and therefore, it would make it easier for snakes to climb out into the back yards.

8. Plaintiff tendered the down payment to Thomas and begin moving into the house pending the execution of the legal documents. Upon plaintiff initial move into the house and while transporting plaintiff's household furniture, a neighbor (an old acquaintance) immediately notified plaintiff that the previous tenants had moved because the owner had refused in many occasions to fix the central air unit and the house was to hot and the electrical bills were extremely high.

9. I immediately notified Mr. Santiago Ruiz, referred to herein as Ruiz, of what I had just been advised by one of the neighbors. Mr. Ruiz advised me that the air unit had already been fixed and that if it wasn't working, that it would be replaced as soon as possible and if not, just leave without paying rents as did the previous tenants.

10. Based on the representations of the defendants and Ruiz, plaintiff began to move into the house with his family.

11. The air conditioned unit was never replaced and therefore the temperature is the house in the high 90's and very unbearable for the children.

12. The backyard was full of ticks and fleas and the children were

unable to enjoy the back yard. The children practicably have spent their entire stay inside the house.

13. Plaintiff made many attempts to dispose of the ticks and fleas in that the defendants refused to exterminate the backyard.

14. Plaintiff's little girl almost got bitten by a 4 foot snake that was between the screen door and the back door. This would had not happen had defendants replace the wire fence with a wooden fence as promised plaintiff.

15. Plaintiff further notified the defendants that the plumbing was bad and needed to be fixed, the bathrooms (both) in the house were in need of repairs, the walls were all patched up, the ceiling in the kitchen had an enormous water stain, the master bedroom had a water stain as well, the ceiling in the living room was also water stained, the ceiling in the hallway was poorly done as well as most of the walls in the house. The workmanship on the house was really in poor shape.

16. The brick around the house was and still is in a very bad shape as if it is cracking and falling in the near future.

17. The neighbors as well as the maintenance personnel who came on several occasions to inspect the house referred to the house as "the ugly duckling of the neighborhood".

18. Outside the air condition problem, the flea and ticks, the patched up walls and ceilings, the cracked brick around the house, there was an electrical problem with the house, of course, to the knowledge of the defendants.

19. As plaintiff's little girl was blow drying her hair in the master bedroom and about to unplug the blow dryer chord off the socket, plaintiff instead reached for the chord to unplug it from the socket, the chord exploded and almost blew plaintiff's right hand away.

20. The previous tenants had already advised defendants of the electrical problem in the master bedroom and the previous problems with the plugs in the master bedroom.

21. All these matters were brought to the attention of defendants and Ruiz to no avail. However, defendants continued to deceive plaintiff in that defendants continue to claim that the matters were going to be fixed. Plaintiff advised defendants that he would make the repairs so long as plaintiff would be credited with all the repairs, including installing a new air unit. Defendants refused and stated that they would fix it.

22. Needless to say, all the personnel that inspected and were willing to do the work necessary complained to plaintiff that they would not get paid by defendants and therefore, they would not be willing to do the work unless plaintiff would pay them. Furthermore, some of the contractors advised plaintiff to not send the payments to defendants in case they would not get paid.

23. Furthermore, plaintiff, as he was about to leave the house to take the children to school and as he was ready to open the garage door, the spring over the garage door broke causing the side door cable to snap and almost cut plaintiff's fingers off. Plaintiff has lost the feeling

on his left hand and two fingers on the right hand as a consequence of the broken spring over the garage door and the snapping of the cable.

24. Plaintiff further lost the use of his copy machine, a Copystar CS-2085, a machine with an original value of $7,200.00 as a result of the short produced at the master bedroom during the explosion of the hair blow dryer.

24. Plaintiff further lost the use of a Rainbow vacuum cleaner as plaintiff's wife was cleaning the carpet during our moving in. The carpet, when installed, was not properly cleaned and therefore, plaintiff's vacuum cleaner burned while trying to vacuum the living room while picking up all the little left over during the installation of the carpet. This vacuum cleaner original cost was approximately $1,000.

25. Plaintiff will further show that the defendants were aware of all the defects of the house in question, yet, they chose to further concealed this matters and allow the plaintiff and plaintiff's family to assume the risk of a potential serious physical injury to plaintiff as well as plaintiff's family.

26. To make things worst, Valentin sent Ruiz to plaintiff's house and break into it and see what was inside the house, when in fact, plaintiff had already advised defendants that plaintiff was not going to do what the previous tenants had done, leave without paying rent in that plaintiff had suffered tremendous damages and plaintiff would seek the recovery of this damages before vacating the house.

27. Plaintiff will further show that Ruiz came to the house with the specific intent to harass and provoke plaintiff and plaintiff's family. Ruiz stated to plaintiff in the presence of plaintiff's wife and little daughter that Valentin had sent him to break into the house. Ruiz, without provocation and reason, began yelling to plaintiff that plaintiff was a member of the "mafia" and that was the reason why plaintiff wanted a wooden fence in the back so that no one would see plaintiff loading and unloading drugs by way of the back yard.

### COUNT I

28. Plaintiff realleges paragraphs 1-27 as if fully set forth herein.

29. Plaintiff has suffered substantial damages as a result of defendants, defendants agents, fraudulent actions, misrepresentations, and the breach of the contract between plaintiff and Thomas.

### COUNT II

30. Plaintiff realleges paragraphs 1-29 as if fully set forth herein.

31. Plaintiff has suffered substantial damage as a result of the defendants, defendant's agents, negligence, gross negligence and intentional actions that caused plaintiff's left hand to be numbed and in constant pain due to the incident at the garage. This has caused plaintiff to be restricted in the use of his hands, and more specific in the need to use his hands to do computer work as well as physical work.

### COUNT III

32. Plaintiff realleges paragraphs 1-31 as if fully set forth herein.

33. Plaintiff has suffered substantial tort damages as a result of defendants, defendant's agents intentional wrongdoings.

Wherefore, Plaintiff demands judgment be entered against defendants, jointly and severally, including an award for compensatory damages, punitive damages, reasonable attorney fees, pre-judgment interest, post-judgment interest, costs in excess of $100,000, and such other relief as the Court deem just and proper.

Plaintiff respectfully demands a jury trial on all issues so triable.

Respectfully submitted,

Jose Luis Pena-Pro Se
P.O. Box 531244
Harlingen, Texas   78553
(956)  412-3048